# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-KA-00577-SCT

*NORRIS CRAWFORD ALEXANDER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/03/1998 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOE VANDYKE |
| | WILLIAM F. TRAVIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | ROBERT H. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/18/2000 |

**BEFORE PITTMAN AND BANKS, P.JJ., AND MILLS, J.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Catherine Diane Blevin was stabbed in her Panola County, Mississippi, home on July 23, 1993 and died two days later. Her son-in-law, Norris Crawford Alexander, was convicted of capital murder as an habitual offender in the Circuit Court of the Second Judicial District of Panola County. Alexander was sentenced to life imprisonment without eligibility for parole. Aggrieved by the verdict, Alexander appeals. We consider the following issues:

## ISSUES

**I. WHETHER THE DEFENDANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL WHERE THE STATE WAS ALLOWED TO ELICIT INADMISSIBLE HEARSAY TESTIMONY WHICH BOLSTERED TESTIMONY REGARDING AN ADMISSION BY THE DEFENDANT.**

**II. WHETHER THE DEFENDANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL DUE TO THE CIRCUIT COURT'S MANIFEST ERROR IN ALLOWING TESTIMONY REGARDING ADMISSIONS WITH NO INDICIA OF RELIABILITY.**

**III. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR MISTRIAL BASED UPON THE PROSECUTION'S INTERJECTIONS OF OPINION IN THEIR OPENING STATEMENT.**

**IV. WHETHER THE CIRCUIT COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MISTRIAL WHERE THE DEFENDANT WAS BROUGHT INTO THE COURTROOM IN THE PRESENCE OF THE JURY WEARING LEG SHACKLES.**

**V. WHETHER THE CIRCUIT COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL WHERE A WITNESS WAS IN CHAMBERS WHILE THE JUDGE RULED ON THE ADMISSIBILITY OF WITNESS TESTIMONY.**

**VI. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO ADMISSION OF DR. HAYNE'S TESTIMONY DERIVED FROM DR. WARD'S AUTOPSY REPORT ALLOWING THE STATE TO ELICIT INADMISSIBLE HEARSAY TESTIMONY.**

**VII. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING EXPERT TESTIMONY THAT WAS BASED UPON PRIVILEGED COMMUNICATION BETWEEN DEFENDANT AND HIS WIFE.**

**VIII. WHETHER THE EVIDENCE IN THIS CASE IS SUFFICIENT TO PROVE THAT THE DEFENDANT IS GUILTY OF CAPITAL MURDER.**

## FACTS

¶2. On July 23, 1993, someone stabbed Catherine Diane Blevin in her Panola County, Mississippi home, resulting in her death two days later. Authorities suspected her son-in-law, Norris Crawford Alexander, whom she had kicked out of her home some two or three months earlier, along with her daughter, after she discovered marijuana growing in their bedroom. However, no evidence linking him to the crime was found until he made a series of statements.

¶3. During a trip to Memphis, Tennessee, Alexander told an acquaintance, Misty Dawn Carpenter, that he had stabbed his mother-in-law. Later, while he was in jail on unrelated charges, he told three other inmates about the killing. Thereafter, certain letters Alexander had written while in jail were obtained by authorities. The letters described how Alexander had killed Blevin. Additional facts necessary for a just determination of this appeal are fully detailed in the discussion of the following issues.

¶4. Following the State's case-in-chief, Alexander chose not to testify and did not present any other evidence. After a short deliberation, the jury convicted him of capital murder. The trial court subsequently found that Alexander was an habitual offender within the meaning of Miss. Code Ann. § 99-19-81 (1994). The State declined to seek the death penalty, and the trial court imposed a sentence of life imprisonment without parole.

## DISCUSSION

**I. WHETHER THE DEFENDANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL WHERE THE STATE WAS ALLOWED TO ELICIT INADMISSIBLE HEARSAY**

**TESTIMONY WHICH BOLSTERED TESTIMONY REGARDING AN ADMISSION BY THE DEFENDANT.**

¶5. Misty Dawn Carpenter was called by the State as a witness in its case-in-chief. Carpenter testified about a conversation she had with Alexander on August 13, 1993, as they drove to Memphis with her boyfriend, Jay Weaver. The pertinent testimony is as follows:

> We was on our way to Memphis and Bugger [Alexander] looked over at Jay and was talking about a knife that had been thrown into some water. I don't know what water, but it was just some water. Jay told Bugger to shut up, to shut up, shut up. Bugger said, "What are you talking about?" And Jay told him just to shut his mouth. And I asked him what was going on. Bugger said, "I stabbed my mother-in-law. You didn't know that?" And I said, "Do what?" And Jay said, "Shut up, shut up, shut up, shut your mouth. Stop running your mouth, stop telling." And I said, "Why did you do that?" I think this is what, this is what was said: It was late at night, toward the morning hours. He went into his mother-in-law's house, and it was some pills or something there that he had wanted, and as he approached in the house she woke up. He put a pillow over her face, and he said he stabbed the bitch. And Jay was just steady telling him to shut up, shut up, shut up.

Immediately before the preceding testimony, Alexander objected "to any potential hearsay," but that objection was overruled. Alexander complains that Carpenter's statements as set forth above were inadmissible and prejudicial hearsay. Alexander is wrong.

¶6. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). We have held that, "[w]here the fact that a particular statement was made is of itself a relevant fact, regardless of the truth or falsity of such statement, the statement is admissible in evidence as an independently relevant fact." *Jackson v. State*, 527 So.2d 654, 656 (Miss.1988) (quoting *Tolbert v. State*, 407 So.2d 815, 821 (Miss.1981)). "Generally, words which accompany and give character to a transaction are not considered hearsay." *Gayten v. State*, 595 So.2d 409, 414 (Miss.1992). A statement is not considered hearsay if it is offered merely to show its effect on someone. *Knight v. State*, 601 So.2d 403, 406 (Miss.1992). In *Knight*, the trial court excluded as hearsay the statement of a witness that another person had warned the defendant that he had better leave the scene. We held that "[t]his statement, when offered for its effect on Knight, is not offered 'to prove the truth of the matter asserted.' Rather it is offered for the fact that it was said. It does not fit the definition of hearsay." *Id.* at 406.

¶7. The testimony regarding Jay Weaver's repeated admonitions to "shut up" does not fit the definition of hearsay because there were no assertions of fact. For the same reason, Weaver's testimony regarding her own part of the conversation is also not hearsay. Carpenter testified that after Alexander began his revelations, she asked him 1) "what was going on"; 2) "Do what?"; and 3) "Why did you do that?" These three statements are questions which were not offered to prove the truth of any matter asserted and are therefore not hearsay.

¶8. Carpenter's testimony regarding Alexander's statements was not hearsay because they were admissions by a party-opponent under M.R.E. 801(d)(2)(A). Such admissions, by definition, are not hearsay. We need not determine whether the statements are exceptions to the hearsay rule since the statements at issue are not hearsay.

¶9. We have consistently held that "[t]he relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." ***Johnston v. State***, 567 So.2d 237, 238 (Miss.1990). In the instant case, no abuse of discretion has been shown. Rather, Alexander argues that "[t]he rules of evidence make no provision for testimony of this nature." The pertinent question is whether the rules of evidence provide for the exclusion of such relevant evidence. Alexander has not shown that they do. This issue fails.

### II. WHETHER THE DEFENDANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL DUE TO THE CIRCUIT COURT'S MANIFEST ERROR IN ALLOWING TESTIMONY REGARDING ADMISSIONS WITH NO INDICIA OF RELIABILITY.

¶10. Alexander next argues that the trial court committed reversible error in allowing the testimony of State witnesses Michael Taylor, Jeffrey Ruffin and Anthony Sims. Taylor, Ruffin and Sims were all incarcerated with Alexander in the same Panola County Jail cell block while Alexander was being held on drug charges unrelated to this case. Feeling the need to get the matter off his chest, Alexander confided to Taylor that he stabbed his mother-in-law to death and provided significant details about the stabbing.

¶11. This statement was buttressed by letters that Alexander sent to Taylor describing how he killed Blevin. Ruffin corroborated Taylor by testifying that he overheard Alexander describing the murder to Taylor. Sims testified that Alexander confessed the stabbing to him while in jail. Alexander submits that these statements are not "admissions" since no other facts prove his guilt. We disagree.

¶12. An admission is "a statement by the accused,... of facts pertinent to the issue and tending, in connection with other facts, to prove his guilt. ***Edwards v. State***, 615 So.2d 590, 597 (Miss.1993) (quoting ***Reed v. State***, 229 Miss. 440, 446, 91 So.2d 269, 272 (1956)). A statement offered against a party and made by a declarant, either in the declarant's individual or representative capacity, is an admission of a party-opponent. M.R.E. 801(d)(2)(A). The Mississippi Rules of Evidence clearly reflect that an admission by a party-opponent, by definition, is not hearsay.

¶13. In ***Sudduth v. State***, 562 So.2d 67 (Miss.1990), the defendant made a confession to several inmates and others persons. On appeal he argued that the testimony of the inmates should not have been admitted. We rejected that argument, holding:

> The trial court did not err in allowing Jessie James Cunningham, Robert Bingham, and Robert Carr to testify regarding an out of court statement, or admission, of defendant. The statement of defendant was admissible, and under Miss.R.Evid. 801(d)(2), the statement did not constitute hearsay.
>
> ...........
>
> Defendant's argument in support of this assignment of error is directed to the weight of the evidence and credibility of the witnesses who testified as to the defendant's admission, because the witnesses were convicts. The convict witnesses say they heard the statement of the defendant, to which they testified, while in jail. However, every person is competent to be a witness except as restricted by Miss. Code Ann. § 13-1-7 (competency of spouses) and § 13-1-11 (persons convicted of perjury or subornation of perjury), or by the Miss.R.Evid. See Miss.R.Evid. 601. *The credibility of a witness, even a convict witness, is for the jury. Bevill v. State*, 556 So.2d 699 (Miss.1990); *Clemmons v. State*, 535 So.2d 1354, 1358 (Miss.1988); *White v. State*, 532 So.2d 1207, 1215 (Miss.1988)

;*Williams v. State*, 463 So.2d 1064, 1069 (Miss.1985); *Warren v. State*, 456 So.2d 735, 738 (Miss.1984); *Browning v. State*, 450 So.2d 789, 791 (Miss.1984). Hence we find this assignment of error to be without merit.

562 So.2d at 70 (emphasis added).

¶14. Taylor, Ruffin, and Sims were all impeached by counsel for Alexander on cross examination, setting before the jury various items of their own dirty laundry. The trial court correctly allowed the jury to decide whether their testimony was credible. This issue is without merit.

### III. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR MISTRIAL BASED UPON THE PROSECUTION'S INTERJECTIONS OF OPINION IN THEIR OPENING STATEMENT.

¶15. Alexander contends that the trial court erred in refusing to grant a mistrial when the prosecutors told the jury, during opening statements, that the sheriff thought he knew who committed the crime and that he, the prosecutor, believed that the sheriff was right. Alexander objected when this statement was made. The trial court sustained the objection and instructed the jury as follows:

> The jury will disregard the last comment by the prosecutor. You will not decide the case . . . based on opinion but from the evidence.

Alexander's motion for a mistrial was overruled.

¶16. On appeal, Alexander, without citation to authority, states that, "The court's admonition to the jury regarding the prosecutor's comment was not sufficient to remove the taint because the prosecutor was addressing the jury as a representative of the State of Mississippi and as a figure of authority in Panola County." The great weight of authority in this State is contrary to Alexander's argument.

¶17. In *Turner v. State*, 721 So.2d 642 (Miss. 1998), the prosecutor made a comment in his opening statement that drew an objection from the defendant. The trial court sustained the objection and instructed the jury to disregard the comment. In rejecting the defendant's argument that a mistrial should have been granted, we quoted from *McFee v. State*, 511 So.2d 130, 135 (Miss. 1987), in stating that, "[c]onsistent with the authority cited above, there is no error where, as here, the trial judge sustains a seasonable objection, instructing the jury to disregard." *Turner*, 721 So.2d at 645. Consequently, we concluded that "the trial court's actions dissipated any taint of prejudice to Turner." *Id.* at 645.

¶18. An analogous situation was considered in *Crenshaw v. State*, 520 So.2d 131, 134 (Miss. 1988), where an objection was sustained and the jury was instructed to disregard the objectionable matter. We reiterated that this Court has continuously recognized a presumption that jurors follow the instructions of the trial court so as to dissipate any prejudicial effect. *See also **Swindle v. State***, 502 So.2d 652, 656 (Miss. 1987). Alexander has not shown that the sustaining of his objection and the instructing of the jury in this case were insufficient remedies to cure any problem caused by the prosecutor's comment. His argument accordingly fails.

### IV. WHETHER THE CIRCUIT COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MISTRIAL WHERE THE DEFENDANT WAS BROUGHT INTO THE COURTROOM IN THE PRESENCE OF THE JURY WEARING LEG SHACKLES.

¶19. Alexander next contends that the trial court committed reversible error by refusing to grant a mistrial "where the defendant was brought into the courtroom in the presence of the jury wearing leg shackles." The record shows otherwise. During a break in the testimony, one of Alexander's attorneys reiterated a motion of mistrial apparently made earlier, as follows:

> We had one other item that we talked about covering earlier today. Again, I think it was a mistrial motion in regard to our concern - - I think it was Mr. VanDyke [co-defense attorney], I didn't see it, but on the very front end of the trial I think Mr. Alexander, according to Mr. VanDyke's personal observation, was led out while either the entire panel, I think during voir dire type process, and he was brought out by the officers without any - I'm not getting on to them, they inadvertently let that happen and we would suggest that if the panel, some of which may be in the box, may have seen that, it could be so highly prejudicial and respectfully move for a mistrial on that basis.

¶20. The trial court then described the layout of the courtroom in detail, including the facts that the holding cell was close to the defense table; that the side door through which Alexander entered and exited the courtroom was only "a few feet" from the defense table; and, that there was a waist high solid railing which separated the area in which the venire had been sitting from the area of the defense table. The trial judge noted that he had never seen or noticed in the early stages of the trial that Alexander was in leg restraints despite having seen him walk into and out of the courtroom. The court also noted that upon being informed by court personnel that Alexander was in the leg restraints, the court had ordered a deputy discretely to escort Alexander from the courtroom and to remove the restraints. The court then overruled Alexander's motion for mistrial, finding as follows:

> I truly believe that, number one, since I never noticed until it was brought to my attention, since at least one of the defense attorneys never noticed it, being closer to the defendant than I was, and based on the railing that separates the working area of the courtroom from the seating audience - I really believe that no member of the jury panel witnessed the defendant with the leg irons. And again, especially based on the design of the courtroom, taking only a very few steps based on where the defense table is. So I'm satisfied that there is no prejudice shown here. As soon as it was brought to my attention, it was corrected immediately, and so for those reasons, the motion for mistrial will be denied.

¶21. On appeal, Alexander makes no meaningful argument of this issue and cites no cases which support his contention. Rather, he generally argues that the review of the situation by the trial court and the trial court's subsequent ruling on the matter were insufficient to protect him from the potential for prejudice and failed to insure that he would receive a fundamentally fair trial. Alexander has failed to demonstrate any error.

¶22. There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court. *Branch v. State*, 347 So.2d 957, 958 (Miss. 1977). Supporting the argument of his issues with reasons and authorities is part of an appellant's burden on appeal. *Pate v. State*, 419 So.2d 1324, 1325-26 (Miss. 1982). Alexander has failed to shoulder his burden of demonstrating some reversible error. He merely states, in conclusory fashion, that members of the jury "may" have seen him in the leg restraints and that the trial court failed to protect him from the "potential for prejudice." Even if the record in this case affirmatively showed that jurors had seen Alexander in leg restraints, which it does not, Alexander's argument is still unpersuasive.

¶23. We have routinely upheld the trial court's refusal to grant a mistrial even in cases where the record affirmatively shows that jurors actually saw the defendant in restraints. *See, e.g., **Davenport v. State***, 662 So.2d 629 (Miss. 1995); ***Wiley v. State***, 582 So.2d 1008 (Miss. 1991). Precedent dictates that the mere sight of a restrained defendant by actual or potential jurors does not require a mistrial. Given the facts of this particular case, the trial court correctly concluded that no mistrial was warranted. Alexander's fourth issue fails.

## V. WHETHER THE CIRCUIT COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL WHERE A WITNESS WAS IN CHAMBERS WHILE THE JUDGE RULED ON THE ADMISSIBILITY OF WITNESS TESTIMONY.

¶24. Alexander contends that his motion for mistrial should have been granted because State witness Hugh Bright, the Panola County Jail Administrator, was present in chambers while counsel and the trial judge discussed the admissibility of evidence. Bright was on the stand and testifying about letters he received from Alexander when a question arose about whether they were admissible. The court announced that an in-chambers hearing with the lawyers was appropriate. The record reflects that Alexander and Bright also entered the judge's chambers with the lawyers. In chambers a discussion ensued about the chain of custody regarding the letters. Bright could not remember which letters had been directly given to him by Alexander and which letters had been given to him by a jailer.

¶25. During these discussions, Alexander's counsel asked why Bright was present in the chambers, noting for the record, "That's just something I'm throwing out." The trial court immediately ordered Bright to leave, and he did so. After further discussions about the letters, the trial court ruled that the letters in question would not be admitted. Alexander's counsel then moved for a mistrial based on the fact that Bright had been present in chambers during part of the discussion about the admissibility of the letters. Alexander was concerned that Bright would "try to think up ways to help or assist Mr. Kelly [the prosecutor] in trying to get some of this evidence in." The trial court overruled the motion.

¶26. Alexander cites M.R.E. 615, the familiar witness sequestration rule, which authorizes exclusion of witnesses from the courtroom to keep them from hearing the testimony of other witnesses, except for "(1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his case." ***Jackson v. State***, 684 So.2d 1213, 1225 (Miss.1996)(quoting M.R.E. 615). Where the trial court denies the motion for mistrial and the degree of prejudice to the defendant shows that the trial court abused its discretion, violation of the rule results in reversal on appeal. ***Id.***

¶27. Alexander states that Bright's testimony was tainted by his presence in chambers "while his testimony was being discussed," and by his presence in chambers "when discussions were had regarding the testimony of another witness." Alexander asserts that "severe prejudice" resulted, but he does not point to any of Bright's subsequent testimony that could have possibly been tainted by what Bright heard in chambers. Alexander argues that he was prejudiced by what Bright heard even though the letters at issue in the discussion were excluded from evidence by the trial court.

¶28. In short, Alexander fails to carry his burden of demonstrating abuse of discretion by the trial court. While there may have been a technical violation of the witness sequestration rule, the error was promptly corrected upon Alexander's objection. Prejudice suffered by Alexander, if any, did not rise to the level of

discretionary abuse by the trial judge. The presumption of correctness which abides in the rulings and remedies of the trial court must therefore prevail. *Branch v. State*, 347 So.2d 957, 958 (Miss.1977) (holding that "[t]here is a presumption that the judgment of the trial court is correct, and the burden is on the Appellant to demonstrate some reversible error to this Court."). Alexander has no room for complaint because the trial court excluded Bright from chambers upon Alexander's first objection. This issue is without merit.

### VI. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO ADMISSION OF DR. HAYNE'S TESTIMONY DERIVED FROM DR. WARD'S AUTOPSY REPORT ALLOWING THE STATE TO ELICIT INADMISSIBLE HEARSAY TESTIMONY.

¶29. Alexander's next assignment of error contends that the trial court erred in allowing Dr. Hayne to testify using Dr. Ward's autopsy report. Alexander claims that the autopsy report is hearsay for which no exception exists and that Dr. Hayne should not have been allowed to use the report to form his own medical opinion. This contention is without merit. Rule 703 of the Mississippi Rules of Evidence states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Furthermore, the Comment to Rule 703 expressly states that an expert witness may use data that is presented to the expert "outside of court and other than by his personal observation."

¶30. Rule 703 allows an expert to base his opinion on the opinions of others which are not in evidence so long as experts in the field ordinarily rely on such opinions in forming their own opinions. *Gray v. State*, 728 So.2d 36, 56-57 (Miss. 1998). For example, a psychiatric expert may rely on the reports of a patient's psychiatric history in arriving at his diagnosis. *Id*. at 57. In such circumstances, the opinion of the non-testifying expert would serve simply as a premise supporting the testifying expert's opinion on a broader issue. *Id*.

¶31. In the case sub judice, Dr. Hayne used the autopsy report prepared by Dr. Ward in forming his own opinion as to the victim's cause of death. The record shows that he also used many other reports, records, and documents prepared by others. All of the sources that Dr. Hayne used to form his opinion and reach his conclusion as to Belvin's cause of death, including the autopsy report, are sources that expert witnesses normally rely on to form such opinions. This issue fails.

### VII. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING EXPERT TESTIMONY THAT WAS BASED UPON PRIVILEGED COMMUNICATION BETWEEN DEFENDANT AND HIS WIFE.

¶32. Alexander argues that the State's handwriting expert, Frank Hicks, was improperly allowed to consider two letters which Alexander had written to his wife in determining whether other incriminating letters were in fact written by Alexander. Alexander contends that the admission of Hicks's testimony violated Alexander's rights protected under the husband-wife privilege of M.R.E. 504(b) by "allowing information derived from confidential marital communications to be used against him." He complains that

once Hicks viewed the privileged communications, they became intrinsically linked to his handwriting examination and his subsequent testimony, resulting in tainted and incurably prejudicial testimony.

¶33. The record reflects that, prior to the testimony by Hicks, the prosecution made the trial court and defense counsel aware of the fact that two of the writing samples relied upon by Hicks were in fact letters which Alexander had penned to his wife. The trial court held that the letters were privileged communications and refused to allow them into evidence. Hicks reevaluated the questioned handwriting without use of the two letters written by Alexander to his wife, and after such reevaluation, Hicks moved one of the questioned documents from the category of a "positive identification" to that of a "strong possibility." Alexander objected to the entire testimony of Hicks, but the trial court overruled the objection and allowed Hicks to testify.

¶34. While the admission of any information contained in Alexander's letters to his wife would have posed a privileged communication problem, the expert's mere reliance on the letters for handwriting purposes poses no such evidentiary bar. In the latter instance, the expert is not concerned with the actual information contained in the letters; rather, he is concerned with the manner in which the letters and words are formed-- the actual handwriting. The content of the privileged letters was not introduced into evidence; and therefore, there was no violation of M.R.E. 504(b). Though unnecessary, the essence of the problem was avoided when the handwriting expert altered his testimony to express opinions unrelated to the documents in question. Today's ruling is consistent with other jurisdictions. See *In re Grand Jury Subpoena*, 461 F. Supp. 1149 (S.D.N.Y. 1978); *People v. Saidi-Tabatabai*, 86 Cal. Rptr. 866, 869 (Cal. Ct. App. 1970); *Jones v. Driver*, 137 S.W.2d 729, 731 (Ky. 1940) (citing *Nelson v. Nelson*, 30 S.W.2d 893 (Ky. 1930)). Accordingly, this issue fails.

## VIII. WHETHER THE EVIDENCE IN THIS CASE IS SUFFICIENT TO PROVE THAT THE DEFENDANT IS GUILTY OF CAPITAL MURDER.

¶35. Alexander argues that the evidence in this case is insufficient to support a guilty verdict, but he fails to argue any error committed by the trial court in overruling his motion for a JNOV. He overlooks the fact that we are an appellate court, and in *Leverett v. State*, 197 So.2d 889, 890 (Miss.1967), we held that, "The Supreme Court is a court of appeals, it has no original jurisdiction, it can only try questions that have been tried and passed upon by the court from which the appeal is taken." *See also Patterson v. State*, 594 So.2d 606, 609 (Miss.1992). We therefore proceed on the assumption that Alexander intended to argue that the trial court committed error in overruling his motion for a JNOV.

¶36. Any review of the sufficiency of the evidence upon which the defendant was convicted is made in deference to the verdict returned by the jury. *Kolberg v. State*, 704 So.2d 1307, 1331 (Miss.1997). The reviewing court therefore looks at all of the evidence in a light most favorable to the verdict, giving the prosecution the benefit of all favorable inferences that may be drawn therefrom. *McFee v. State*, 511 So.2d 130, 133-34 (Miss.1987). This familiar standard of review also applies in capital cases. *Mackbee v. State*, 575 So.2d 16, 36 (Miss.1990). As we explained in *Kolberg*, "[t]he jury is the sole judge of the credibility of the witness and the weight to be attached to their testimony." *Id.* We may reverse only when, "[w]ith respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty." *Gossett v. State*, 660 So.2d 1285, 1293 (Miss.1995).

¶37. Besides arguing that the evidence was insufficient to establish his identity, Alexander alleges no

deficiency in the State's proof of the elements for capital murder. Alexander's multiple confessions established a firm basis for his conviction in the eyes of the jurors, who shouldered the ultimate responsibility for determining the weight and credibility of all the evidence. Considering all of the evidence in the light most favorable to the verdict, we can not find that Alexander's conviction was based on insufficient evidence. This issue fails.

## CONCLUSION

¶38. The jury had sufficient evidence to return a verdict of guilty in this case. None of the issues asserted by Alexander rise to the level of reversible error on the part of the trial court. Therefore, the guilty verdict, the subsequent sentence of life imprisonment without the possibility of parole, and the judgment of the Panola County Circuit Court are affirmed.

¶39. **CONVICTION OF CAPITAL MURDER AND SENTENCE TO A TERM OF LIFE IMPRISONMENT WITHOUT ELIGIBILITY FOR PAROLE WITH THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, WALLER AND COBB, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**