796 So.2d 243 (2001)
Carsie D. PEYTON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00731-COA.
Court of Appeals of Mississippi.
May 29, 2001.
Rehearing Denied July 24, 2001.
Certiorari Denied September 27, 2001.
*244 Virginia Carter Carlton, Columbia, Vicki Lachney Gilliam, Jackson, for Appellant.
Office of the Attorney General by Deirdre McCrory, for Appellee.
Before McMILLIN, C.J., IRVING, and CHANDLER, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Carsie D. Peyton has appealed his conviction of sale or transfer of a Schedule II controlled substance. He alleges that the trial court erred in admitting into evidence certain material claimed by the State to be rocks of cocaine sold by Peyton along with crime laboratory test results indicating that the material was, in fact, cocaine. Secondly, he claims that the State's evidence linking him to the alleged sale was insufficient to establish him as the person who completed the sale, or, alternatively, that the jury's verdict finding him to be the seller was against the weight of the evidence. We find these issues to be without merit and affirm Peyton's conviction.

I.

Exclusion of the Cocaine as Evidence
¶ 2. Peyton bases his argument concerning the admissibility of the cocaine and the laboratory test results on two propositions. First, he points out that the State's undercover agent who made the actual buy reported purchasing two rocks of what she believed to be crack cocaine, whereas, the sealed evidence bag produced at trial contained four rocks. Peyton also points out that the lab assistant at the crime lab who actually receipted for the evidence when it was delivered by law enforcement officers did not testify at trial and that this constituted a break in the chain of possession. The two in combination, Peyton argues, create a presumption that the evidence was tampered with in some way, thus destroying any probative value this evidence might otherwise have.
¶ 3. Admissibility of evidence, in the context of the issue now before us, is governed by the provisions of Mississippi Rule of Evidence 901(a), which requires the proponent to produce "evidence sufficient *245 to support a finding that the matter in question is what its proponents claim." M.R.E. 901(a). In this case, the State is the proponent and it claims that the material produced at trial was the same material that its undercover agent purchased from a person she identified to be the defendant. In order to satisfy this prerequisite to admissibility, the State relied upon "chain of custody" evidencea longrecognized means of authenticating evidence in this State. Butler v. State, 592 So.2d 983, 985 (Miss.1991). By live witnesses, none of whose credibility was impeached at trial, the State showed the chain of custody from the undercover agent to the head of the narcotics task force, who sealed the material and placed it into a secure evidence locker. From there, the same officer retrieved the material in the same sealed bag and delivered it to another officer who delivered the material to the State crime lab, where a lab employee named Sharon Denoux signed for receipt of the sealed material. This lab employee did not testify at trial. Rather, another lab employee who did the actual testing of the substance testified that she received the bag in a still sealed condition and that she broke the seal for purposes of retrieving the material for chemical analysis, after which she re-sealed the remaining material. Subsequent testimony showed that this resealed material was delivered back to Marion County in the form that it was offered into evidence at trial.
¶ 4. The only technical break in the chain of custody in terms of live witnesses who handled the material was the fact that Sharon Denoux did not testify. Nevertheless, there was evidence of delivery to her in a sealed condition and testimony that it was the standard custom and practice of the crime lab to receive such material only if it was properly sealed and to securely preserve the material in its sealed condition until an appropriate official of the laboratory was prepared to unseal the material for chemical analysis. The supreme court has "never required the proponent to produce every person who handled the object, nor to account for every moment of every day." Id. The State's obligation, rather, is to satisfy the trial court that there is no reasonable inference to be drawn from the evidence that the evidence has been tampered with or other material substituted in its place. Ormond v. State, 599 So.2d 951, 959 (Miss.1992).
¶ 5. An inference of tampering or substitution on these facts would require a finding that either (a) one or more of the live witnesses at trial was being untruthful, or (b) that Sharon Denoux purposely deviated from established crime laboratory procedures by surreptitiously unsealing the evidence bag, tampering with its contents, and then resealing the bag in a manner that was undetectable by the technician who actually performed the chemical analysis of the evidence. There is nothing in this record to even faintly suggest that either such circumstance occurred. We are satisfied that the State proved with enough certainty to meet the requirement of Rule 901(a) that the material tested at the crime laboratory was the same material obtained by the undercover agent at the defendant's home on December 2, 1998. Thus, any contention that the physical evidence or the test results should have been excluded is without merit.

II.

The Attack on the State's Evidence of Guilt
¶ 6. Peyton makes a two-fold attack on the worth of the State's evidence, charging that the evidence was insufficient to convict or, in the alternative, that the guilty verdict was against the weight of the evidence. *246 His arguments on the two contentions are combined in his brief. The argument, in essence, consists of an assertion that Peyton was convicted on a case of misidentification.
¶ 7. The State presented testimony from the undercover agent identifying Peyton as the seller of the drugs. This agent was not so impeached as to render her testimony entirely incredible, nor were the facts of her testimony so contradicted by other evidence as to make her testimony unworthy of belief. In that circumstance, it simply cannot be said that the evidence of identification was so lacking as to render proof of Peyton's involvement insufficient as a matter of law, since, in assessing such matters, a reviewing court is required to view the evidence in the light most favorable to upholding the verdict. Alexander v. State, 759 So.2d 411 (¶ 36) (Miss.2000). Only if the evidence as to some critical elementin this case, Peyton's identityis so lacking that the court determines that a reasonable and fairminded juror could only acquit, may an appellate court set aside the jury's verdict on this ground. Id.
¶ 8. This conclusion does not answer the alternate challenge to the verdict that it was against the weight of the credible evidence. Again, a reviewing court must view all of the evidence in the light most favorable to the State and may intercede only if it is convinced that to do otherwise would permit a manifest injustice to occur. Gibson v. State, 731 So.2d 1087 (¶ 11) (Miss.1998). The only evidence tending to impeach the undercover agent's identification of Peyton as the man who sold the drugs to her was the testimony of Peyton's daughter, Celeste Hartwell. Hartwell seemed to suggest, though not directly asserting the fact, that the undercover agent had been admitted to Peyton's home and was sold a quantity of material, later proven to be cocaine, by some unidentified person bearing a resemblance to Peyton. She did not purport to identify that person but only testified that her father was in the habit of permitting any number of people to have access to his home and that, perhaps, one such person had taken advantage of her father's kindly nature. She further testified that she had listened to the State's audiotape of the drug transaction and claimed that it was not her father's voice. Her opinion was based primarily on the fact that the speaker in the tape had avoided the use of profanity and she reported to the jury that her father routinely used profanity in his casual speech.
¶ 9. It is the duty of the jury sitting as finder of fact to weigh the evidence and determine what weight and worth to give to any particular testimony. Jones v. State, 776 So.2d 643 (¶ 15) (Miss.2000). The jury, by its verdict, indicated that it found the undercover agent's testimony more credible than that of Peyton's daughter. There is nothing in this record that would persuade this Court that it would be necessary for us to intercede to avoid a miscarriage of justice. This attack on the jury verdict is without merit.
¶ 10. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF SALE OR TRANSFER OF A CONTROLLED SUBSTANCE, SCHEDULE II (COCAINE), AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, EIGHT YEARS TO SERVE AND SEVEN YEARS SUSPENDED WITH POST-RELEASE SUPERVISION AND FINE OF $1,843.50, IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO MARION COUNTY.
*247 KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.