# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00844-COA

ASHIA FORREST A/K/A ASHIA WILLIAMS
FORREST A/K/A ASHIA WILLIAMS-FORREST

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/2022 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/12/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     On the morning of May 17, 2019, Ashia Forrest shot and killed her boyfriend Atarius Horton in the front yard of her home after a dispute they had the night before about him talking to an ex-girlfriend. After her indictment and trial, Forrest was convicted of first-degree murder. The Holmes County Circuit Court sentenced Forrest to life imprisonment in the custody of the Mississippi Department of Corrections. Forrest filed a posttrial motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied. Aggrieved, she appeals claiming that the first-degree murder verdict is against the weight of the evidence, that the trial court committed evidentiary errors at trial,

and that she received ineffective assistance of counsel. Finding no reversible error, we affirm Forrest's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. A jury trial was held in February 2022. In addition to testimony from investigating witnesses and a forensic pathologist as to the cause of death, the jury heard from Aisha Smith, the mother of Horton's child. She testified that she picked him up from Forrest's home early on the morning of the killing and that they were later confronted by Forrest in Smith's driveway. She testified that Forrest asked if she had seen Horton and told her he was "trying to play this game between me, you and [Casbenika Fisher]," who was also Horton's ex-girlfriend. Smith testified that as she left, Forrest backed up her vehicle like she was attempting to hit Horton, and he threw rocks at her car.

¶3. The jury also heard from Horton's ex-girlfriend Fisher that the night before the killing, she had had a conversation with him that was cut short when Forrest asked Horton who was on the phone. Fisher further testified that Horton asked her to pick him up early the next morning from a friend's house, and after initially planning to go to his stepfather's house, she dropped him back off at the friend's house. Soon after, she was stopped by Forrest, who was out looking for Horton. During their interaction regarding Horton, Forrest told her that "she was going to cut him up," and "I'm fixing to go buy me some bullets." Finally, Fisher testified that as Forrest drove off, she said, "I'm finna go to my house and see if he's there. Cause she was going to pull up like John Wayne." The jury also heard from Horton's

stepfather, Robert Ellington, about his interaction with Forrest when she came to his house around 7:15 on the morning of the killing. She was bringing Horton's clothes and stated she was "tired of [Horton's] mess" and said, "[W]hen I find your son, I'm going to kill him." Prior to leaving, she later told Ellington, "[N]aw I'm not going to kill him, I'm going to shoot him in the leg."

¶4. Captain Sam Chambers of the Holmes Country Sheriff's Department testified that he arrived at the house after the killing, retrieved the murder weapon, and took a statement from Forrest, who admitted to shooting Horton. Forrest initially told Chambers that Horton had returned and was trying to break into the house and that they had a confrontation in the bedroom. She later explained that following the altercation, as Horton walked outside the house, she followed him to the door and shot him while he was standing behind her car. Chambers testified that he took measurements, and the back of the car was approximately twenty to twenty-two feet from where Forrest stated she was standing at the door when she shot Horton. After being shot, Horton ran approximately fifty feet into a pasture before he fell and died from the gunshot wound.

¶5. After the State rested its case-in-chief, Forrest moved for a directed verdict alleging that the State failed to meet its burden of proof for first-degree murder. Defense counsel argued that the State specifically failed to put forth evidence that the killing was committed with deliberate design to effect death. The trial court found that the testimony of the State's witnesses satisfied the burden and overruled the motion. Testifying on her own behalf,

3

Forrest claimed that she shot Horton in defense of herself and her children in her home. At the conclusion of the case, Forrest's defense counsel renewed her motion for a directed verdict on the same grounds previously asserted. The trial court overruled the renewed motion.

¶6.     The jury instructions given by the court provided the jury with the option to find Forrest guilty of first-degree murder or the lesser-included offense of second-degree murder, or the jury could find Forrest not guilty and acquit her of the charge. The jury was also instructed on self-defense and given an explanation of the parameters of the lawful use of force for self-defense to apply.   After deliberations, the jury returned a verdict, finding Forrest guilty of first-degree murder. The circuit court sentenced Forrest on March 25, 2022, ordering her to serve life in prison. Subsequently, Forrest filed her motion for a JNOV or new trial, which the trial court denied.

## DISCUSSION

¶7.     Forrest ultimately seeks to have her conviction reversed and this case remanded for a new trial. On appeal, the questions before this Court are as follows: (1) whether the verdict of first-degree murder was against the weight of the evidence such that a new trial is warranted; (2) whether the trial court committed reversible errors in the admission of evidence at trial; and (3) whether her defense counsel's representation constituted ineffective assistance of counsel. After a thorough review of the record, we find that the weight of the evidence supports the jury's verdict of first-degree murder. The trial court did not abuse its

4

discretion when making the evidentiary rulings, and the claims of ineffective assistance are dismissed without prejudice.

## I. Overwhelming Weight of the Evidence

¶8. Forrest claims that in finding her guilty of first-degree murder, the jury's verdict was contrary to the overwhelming weight of the evidence. In support of her argument on appeal, she points to the evidence she believes supports her claim of self-defense and her state of mind at the time of the killing. As such, Forrest insists that the evidence does not support finding her guilty of first-degree murder and maintains that the circuit court erred by denying her motion for a new trial.[1]

¶9. Appellate courts "review[] the grant or denial of a motion for a new trial under an abuse-of-discretion standard." *Winner v. CSX Transp. Inc.*, 100 So. 3d 478, 486 (¶29) (Miss. Ct. App. 2012). Forrest's motion for a new trial challenged the weight of the evidence, and "[w]eight and credibility are matters for the jury to resolve." *Stevenson v. State*, 366 So. 3d 949, 955 (¶22) (Miss. Ct. App. 2023) (quoting *Lacey v. State*, 310 So. 3d 1206, 1215 (¶22) (Miss. Ct. App. 2020)). As such, when "review[ing] the denial of a motion for a new trial, we afford great deference to the jury and its verdict." *Green v. State*, 365 So. 3d 1020, 1036-37 (¶48) (Miss. Ct. App. 2022) (quoting *Carson v. State*, 341 So. 3d 995, 1000

---

[1] "'A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence' in that it seeks a new trial." *Perrigin v. State*, 353 So. 3d 1108, 1111 (¶20) (Miss. Ct. App. 2023) (quoting *Thomas v. State*, 48 So. 3d 460, 469 (¶20) (Miss. 2010)). Forrest does not challenge the sufficiency of the evidence on appeal.

(¶¶10-11) (Miss. Ct. App. 2022)). This Court does "not 'assume the role of juror on appeal[,]'" and will "not sift through conflicting evidence and weigh alternative theories like a juror." *Stevenson*, 366 So. 3d at 955 (¶22) (quoting *Lacey*, 310 So. 3d at 1214 (¶18)). Our supreme court has stated, "[W]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence." *Carson*, 341 So. 3d at 1000 (¶11) (quoting *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)). Furthermore, our courts have repeatedly admonished that this Court's

> role as an appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Stevenson*, 366 So. 3d at 955 (¶22) (quoting *Carson*, 341 So. 3d at 1000 (¶11)).

¶10. Reviewing the evidence in the light most favorable to the verdict, the record shows that the jury heard evidence as follows: (1) Horton left Forrest's home the morning after the argument. (2) As Forrest drove around Lexington on the morning of the shooting, Forrest told more than one person that she was going to kill Horton. (3) Horton's stepfather observed three guns in Forrest's vehicle when she and her young children stopped by his house that morning. (4) Forrest made a point to load her .38-caliber handgun with bullets from the vehicle and took the gun with her inside her house when she returned home. (5) Horton also returned to Forrest's house, walked outside, and was standing in the yard unarmed when Forrest shot him and killed him.

¶11. The only evidence of self-defense was presented by Forrest through her own

6

testimony. She testified at trial that Horton came back to her house on the day in question, and he became aggressive, he threatened that he was going to kill her, he walked outside to where she believed he had a gun hidden, he turned around like he was getting ready to charge at her, and she shot him in fear for her life.

¶12.   The jury was presented with conflicting evidence regarding the facts motivating Forrest's act of shooting and killing Horton. After all the evidence was presented, the jury assessed the credibility of the witnesses and determined the weight and worth of the evidence. The jury was properly instructed on the lesser-included offense and the law regarding self-defense. Ultimately, the jury resolved the conflicts in the evidence and opposing testimony and returned a verdict finding Forrest guilty of first-degree murder. Forrest essentially asks this Court to re-weigh the evidence and overturn the jury's verdict based on the believability of her testimony. However, we do not re-weigh evidence, and we do not assess the credibility of witnesses. The jury is the *sole* judge assessing the credibility and weight of conflicting testimony; thus, "the credibility of witnesses is not for the reviewing court." *Eubanks v. State*, 341 So. 3d 896, 911 (¶48) (Miss. 2022). Viewing the evidence in the light most favorable to the jury's verdict finding her guilty of first-degree murder, we do not find that the jury's verdict convicting Forrest of killing Horton with deliberate design was against the overwhelming weight of the evidence. The scope of appellate review does not permit this Court to reweigh the evidence or judge credibility and alternate theories Forrest suggests. As we are often reminded, "[t]he trial judge who hears

the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire." *Little*, 233 So. 3d at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). The trial court did not abuse its discretion when it denied Forrest's motion for a new trial.

## II.   Trial Court's Evidentiary Rulings

¶13.   "'[T]he standard of review for evidentiary rulings is abuse of discretion[,]'" meaning we will "only overturn the trial court's decision if it . . . was arbitrary and clearly erroneous." *Dukes v. State*, 369 So. 3d 553, 558 (¶13) (Miss. 2023) (quoting *Cook v. State*, 161 So. 3d 1057, 1065 (¶21) (Miss. 2015)). On appeal, "[e]videntiary rulings are affirmed unless they affect a substantial right of the complaining party." *McClusky v. State*, 359 So. 3d 673, 676 (¶9) (Miss. Ct. App. 2023) (quoting *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016)). More specifically, "[t]his Court will not reverse a trial judge's decision on the admissibility of testimony offered at trial unless prejudice amounting to reversible error resulted from such a decision." *Dukes*, 369 So. 3d at 558 (¶13) (quoting *Bishop v. State*, 982 So. 2d 371, 375 (¶15) (Miss. 2008)).

¶14.   Forrest alleges the trial court erred by allowing testimony constituting inadmissible hearsay and irrelevant statements. First, Forrest claims the court impermissibly allowed hearsay evidence during Captain Chambers's testimony. Second, she argues Fisher's testimony about the condition of her children was unrelated to the events of Horton's death

8

and was prejudicial to her.

### A. Hearsay

¶15. Forrest claims that Chambers's testimony included inadmissible statements that Ellington and Fisher gave during Chambers's investigation. In her brief, she claims that Chambers's testimony about what Forrest said to Fisher and Ellington was hearsay and inadmissible when it was offered against her to prove that she made statements threatening to kill or harm Horton. First, she specifically contends it was error to admit her statement to Ellington on the morning of the killing ("if he comes back to my house, I'm going to kill him"). Second, she contends the trial court erred in overruling the objection to admitting her statement to Fisher (on that same morning) that Horton could not come back to her house and that if he did, she was "going to make him my little bitch" and referenced making Horton babysit her kids "while I go out and have sex with other men." Finally, she complains about the admission of her statement that morning to Fisher about going home when she said, "I ain't got no other choice because I am finna to go buy me a box of bullets."

¶16. Importantly, although gathered from interviews with Fisher and Ellington, the testimony consisted of the particular remarks and comments that were vocalized by Forrest herself, the defendant on trial. "An admission is a statement by the accused of facts pertinent to the issue and tending, in connection with other facts, to prove [her] guilt." *Alexander v. State*, 759 So. 2d 411, 416 (¶12) (Miss. 2000) (quoting *Edwards v. State*, 615 So. 2d 590, 597 (Miss. 1993)). Therefore, as it relates to Ellington and Fisher, the witness's "statements [are]

9

not hearsay because they [a]re admissions by a party-opponent under M.R.E. 801(d)(2)(A)." *Alexander*, 759 So. 2d at 415 (¶8). "Such admissions, by definition, are not hearsay." *Id*. This Court "need not determine whether the statements are exceptions to the hearsay rule since the statements at issue are not hearsay." *Id*. Because the contested information came from Forrest's own statements on the morning she shot and killed Horton and because the information was offered in proceedings against Forrest, her statements to Ellington and Fisher were not hearsay. Granted, although the Appellant did not specifically argue a violation of Mississippi Rule of Evidence 805, an analysis under the "double hearsay" or hearsay-within-hearsay principle would show that the utterance of these statements by Chambers was in violation of the rule. *See Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984). However, because both Ellington and Fisher testified at trial that Forrest made substantially similar statements, any error by the admission of the same statements through Chambers was harmless. *See also Mixon v. State*, 921 So. 2d 275, 278-79 (¶¶9-11) (Miss. 2005) (finding a defendant's right to a fair trial was not prejudiced where declarant in a double hearsay scenario testified and was available for cross-examination).[2]

---

[2] We note that in recent years, the styling of Rule 801(d)(2) was amended to eliminate any confusion and reinforce that a statement does not have to be an "admission" to be admissible under this provision; any statement by a party is potentially admissible. The current advisory committee note provides:

> Statements falling under the hearsay exclusion provided by Rule 801(d)(2) are no longer referred to as "admissions" in the title to the subdivision. The term "admissions" is confusing because not all statements covered by the exclusion are admissions in the colloquial sense--a statement can be within the exclusion

## B. Relevance

¶17. Forrest contends that the portions of Fisher's testimony describing the condition of the two children in Forrest's car that morning were unrelated to the events of the killing and prejudicially implied that Forrest was a bad mother. She also alleges Fisher's testimony was irrelevant because the testimony about the state of her children had no bearing on her claim of self-defense.

¶18. "Irrelevant evidence is not admissible." MRE 402. "The Mississippi Rules of Evidence define evidence as relevant if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the case.'" *Clark v. State*, 315 So. 3d 987, 996 (¶18) (Miss. 2021) (quoting MRE 401). "If the proffered evidence has any probative value at all, Rule 401 favors its admission." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 40 (¶27) (Miss. 2003).

¶19. Fisher's testimony described her observations during her interaction with Forrest on the morning of the killing. She stated that the children appeared to be between ages one and three; they were standing in the front passenger seat and were not in a car seat; and they had on old diapers and no clothes. This testimony was provided in the context of a line of questioning regarding Forrest's frame of mind. Particularly, the testimony was relevant to show Forrest's intent and focus on finding Horton and the potential effect on exercising basic

---

even if it "admitted" nothing and was not against the party's interest when made.

11

childcare under the circumstances as they existed just prior to killing Horton. Thus, the court did not abuse its discretion by finding Fisher's testimony about Forrest's children to be relevant.

### III.    Ineffective Assistance of Counsel

¶20.    Lastly, Forrest appeals the circuit court's judgment on a claim that she received ineffective assistance of counsel at trial. Forrest claims her counsel was ineffective for (1) failing to object to improper testimony, and (2) failing to request jury instructions for manslaughter. Specifically, she sets forth the particular testimony to which defense counsel should have objected, including pieces of testimony alleged to contain inadmissible hearsay. She further argues that counsel's failure to challenge such evidence prejudiced her theory of the case and contributed to her conviction. Forrest also claims her defense counsel failed to request manslaughter instructions as an alternative to first-degree murder. She argues that the facts show a heat of passion and support her theory of imperfect self-defense.

¶21.    As an initial matter, we note that "ineffective assistance of counsel claims are more appropriately brought during post-conviction proceedings[,]" rather than on direct appeal. *Carnley v. State*, 348 So. 3d 1071, 1078 (¶38) (Miss. Ct. App. 2022) (quoting *Dartez v. State*, 177 So. 3d 420, 423-24 (¶18) (Miss. 2015)). A claim of ineffective assistance of counsel may not be addressed on direct appeal unless "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the

trial judge." *Hinton v. State*, 311 So. 3d 1213, 1215 (¶9) (Miss. Ct. App. 2020) (quoting *Colenburg v. State*, 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App.1999)). "This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020). In this case, the State does not stipulate that the record is adequate for this Court to review Forrest's ineffective-assistance claims, and the record is inadequate to go further on direct appeal. As such, we dismiss Forrest's request for relief without prejudice to her discretion to present her claims in a motion for post-conviction collateral relief.

## CONCLUSION

¶22.    Viewing the evidence in the light most favorable to the jury's verdict, the verdict was not against the overwhelming weight of the evidence, and the circuit court did not abuse its discretion by denying the motion for a new trial. We also find the trial court's evidentiary rulings were not abuses of discretion, and Forrest's claims of ineffective assistance of counsel are dismissed without prejudice. Therefore, we affirm Forrest's conviction and sentence for first-degree murder.

¶23.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**