BARNES, J.,
for the Court:
¶ 1. This negligence action arose out of a collision between a freight train and a truck hauling a lowboy trailer. The train was operated by James Winner and Joe *480 Brakefield, who filed complaints[1] against Defendants CSX Transportation (CSXT) and Precision Construction Group, Inc. (Precision).[2] Precision’s tractor-trailer, driven by its employee Donald Cochran, became stuck on the Jeff Davis Avenue grade crossing in Long Beach, Mississippi, and CSXT’s train struck it. Winner and Brakefield claim that central to the case is whether CSXT had prior notice of problems at the crossing.
¶ 2. After four years of extensive discovery, a six-day trial ensued, resulting in a jury verdict for CSXT. Approximately one year after filing a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, the Winner and Brakefield filed supplemental exhibits to their motion under Mississippi Rule of Civil Procedure 60. The exhibits consisted of two affidavits by two individuals stating they had seen trucks become stuck on the Jeff Davis crossing and CSXT trucks repairing damage to the tracks. Winner and Brakefield claimed the affidavits were newly discovered evidence that CSXT had prior notice that the crossing was dangerous. After their post-trial motion was denied, Winner and Brakefield filed a Rule 60 motion for relief and reconsideration. Winner and Brakefield based this motion on alleged fraud by CSXT, in addition to newly discovered evidence, because they claimed CSXT failed to answer honestly an interrogatory on prior notice of the crossing’s condition. The trial court denied the motion. Winner and Brakefield appeal, arguing they are entitled to a new trial because CSXT committed misrepresentation or misconduct, and there is newly discovered evidence due to the information in the two affidavits. Finding no error, we affirm.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 3. On a rainy morning in November 2004, Precision’s tractor-trailer, hauling a lowboy loaded with a backhoe, became lodged on the Jeff Davis grade crossing. The trailer had less than six inches of ground clearance. When Cochran, the truck’s driver, saw the CSXT train coming, he tried to operate his truck’s hydraulics to dislodge it, but was unsuccessful.
¶ 4. From the train, Winner, the locomotive engineer, and Brakefield, the conductor, noticed the tractor-trailer stalled in the middle of the crossing. Winner placed the locomotive in emergency mode and applied the brakes, but despite these efforts, the train collided with the lowboy trailer. Cochran escaped before the train hit his truck. The train derailed, and the backhoe crashed into a nearby building.
¶ 5. Winner and Brakefield filed separate lawsuits in the Harrison County Circuit Court, asserting numerous legal claims for physical and mental injuries under the Federal Employers’ Liability Act. Winner and Brakefield alleged CSXT failed to provide them a safe workplace, properly maintain the crossing, and heed warnings that hang-ups were occurring at the crossing, among other matters. The two complaints were consolidated in 2006, and discovery ensued for the next several years.
¶ 6. In March 2009, a six-day trial began. Several witnesses testified for Winner and Brakefield about the Jeff Davis crossing. Archie Burnham testified as an expert witness on grade-crossing design. Winner and Brakefield retained him to examine *481 the grade crossing and its ability to handle lowboy trailers. Burnham opined that the crossing was improperly designed, and thus, the slope of the roadway was insufficient to allow the tractor-trailer to pass over the tracks without getting stuck. Burnham testified that the entity responsible for the design of the grade crossing is the entity that owns the road, the City of Long Beach. He also noted Jeff Daws Avenue had been designated as a truck route by the City.
¶ 7. Winner testified that between 1998 and 2004, he had heard about or seen trucks getting hung up on the Jeff Davis crossing about six times. The CSXT dispatcher would inform Winner when a truck was hung up on the crossing. Many years before the accident, Winner claimed he verbally reported a hang-up at the crossing to CSXT road foreman of engines Randy Cooper, and that CSXT needed to look into this problem. Cooper, however, did not recall Winner’s informing him of a hang-up at the crossing. In 2004, prior to the accident, Winner claimed he had to stop his train because a truck was hung up on the crossing; however, he did not report the incident to CSXT. He also recalled once when, as he came upon the Jeff Davis crossing in his train, a wrecker was dragging a tractor-trailer from the crossing. Also, Brakefield testified that he had heard the CSXT train dispatcher issue radio warnings about trucks being stuck on the crossing. However, he never reported a problem with the Jeff Davis crossing to CSXT, nor had he ever seen firsthand a truck stuck on the crossing until this accident.
¶ 8. Winner and Brakefield’s witness, Douglas Miller, a professional truck driver for Precision, testified that when he pulled lowboy trailers over the Jeff Davis crossing, they would always drag, and he had had a truck hang up on the crossing. However, he never notified CSXT of these incidents. William Skellie, the mayor of Long Beach, testified that he had had complaints from citizens about “the crossing being rough”; so he called CSXT. When he did not receive a response, he notified the Mississippi Department of Transportation in September 2004 to see if it could contact CSXT or repair the crossing.
¶ 9. CSXT called several witnesses who testified they were unaware of a problem at the Jeff Davis crossing. Melinda Du-buisson, who was an eyewitness to the collision, testified that, having lived in Long Beach her entire life, she was not aware of any prior tractor-trailer hang-ups at this crossing. Her husband, who works for the Long Beach Fire Department, also testified that he could not recall prior hang-ups. Additionally, the following three witnesses testified for CSXT that they were not aware of any reports of dragging or hang-ups at the crossing: Wayne McDowell of the Long Beach Police Department; Pat Fore, owner of Precision; and Steven Miskemens, road foreman of engines at CSXT.
¶ 10. The jury was instructed that testimony concerning prior incidents at the crossing could be used only to determine whether CSXT had prior knowledge of such incidents, not as evidence that the crossing was improperly designed or unreasonably dangerous. Also, the jury was instructed that to prove negligence, Winner and Brakefield were required to show CSXT either created the unsafe condition or that the condition had existed for so long that CSXT knew or should have known about it. If they failed to prove either of these matters, the jury had to return a verdict for CSXT. Finally, if the jury found the sole and proximately cause of the accident was the slope of the crossing, they were instructed to return a verdict for CSXT.
*482 ¶ 11. After the jury returned a verdict for CSXT, Winner and Brakefield moved for a JNOV or, alternatively, a new trial. For approximately one year, from April 2009 until May 2010, the hearing for the motion was postponed numerous times. During this time, Winner and Brakefield searched unsuccessfully for individuals with prior knowledge about accidents or hang-ups at Jeff Davis crossing.[3] They then retained a private investigator and former CSXT employee, Larry Smith, to help them in this regard. Smith ran an ad in the local newspaper “as a last desperate attempt to locate eyewitnesses.” As a result of the ad, two individuals, Bernard Brondum and Paul McDaniel, came forward stating they had witnessed accidents at the Jeff Davis crossing and CSXT trucks repairing and inspecting the tracks at the crossing after these accidents. They executed affidavits stating such, which were submitted on May 18, 2010, by Winner and Brakefield under Rule 60 as “supplemental exhibits” to their motion for a JNOV or a new trial. Winner and Brakefield claimed that the affidavits proved CSXT “knew or should have known of the dangerous condition that existed at the Jeff Davis crossing” prior to the accident. After a hearing, the trial court denied the motion.
¶ 12. On June 18, 2010, Winner and Brakefield filed a motion to reconsider the May 18 motion, and for relief from judgment, again under Rule 60. Winner and Brakefield alleged they were entitled to a new trial based on “fraud, misrepresentations, and misconduct” by CSXT under Rule 60(b)(1), because the affidavits “clearly show[ed] that [CSXT] had prior knowledge of complaints or incidents similar to the one” of this case that it did not disclose. Further, Winner and Brakefield claimed CSXT dishonestly answered an interrogatory back in November 2005 dealing with any prior notice of accidents or complaints on the condition of the Jeff Davis crossing. The interrogatory states:
INTERROGATORY NO. 8: If, for a period of five (5) years prior to Plaintiffs injuries, you received through your agents, servants and/or employees any complaints and/or notice, either oral or written, including reports of accidents or injuries under similar circumstances, about the condition of the Jeff Davis Avenue crossing, then state what complaints and/or notices were received, who made them, and what disposition was made of the complaints and/or notice and attach a copy. Please include in your answer any reports of accidents or injuries sustained under similar circumstances.[4]
ANSWER: None.
Additionally, Winner and Brakefield argued they were entitled to a new trial based on newly discovered evidence under Rule 60(b)(3).
¶ 13. Also on June 18, 2010, Winner and Brakefield filed a notice of appeal from the final judgment entered March 31, 2009, the denial of the motion for a JNOV or a new trial entered May 21, 2010, and any future adverse ruling on their latest Rule 60 motion, which was still pending.[5] In Novem *483 ber 2010, after a hearing on the June 18, 2010 Rule 60 motion, the trial court denied the motion.
DISCUSSION OF THE ISSUES
I. Fraud, Misrepresentation, or Misconduct under Rule 60(b)(1)
¶ 14. Winner and Brakefield claim CSXT committed fraud, misrepresentation, or misconduct due to its answer during discovery to Interrogatory 8, and under Rule 60(b)(1) they are entitled to relief from the adverse judgment and a new trial. Winner and Brakefield claim CSXT denied, under oath, that it had prior notice about the condition of the Jeff Davis crossing, and this misrepresentation was material to the case. Winner and Brakefield point to the two affidavits of Brondum and McDaniel,[6] which they submitted as supplemental exhibits to their motion for a JNOV or a new trial,[7] as proof CSXT had prior notice of the condition of the crossing. Specifically, Winner and Brakefield point out that both individuals stated that they had personally seen trucks hung up on the Jeff Davis crossing and CSXT repair trucks at the Jeff Davis crossing after the incidents.
¶ 15. “(T]he standard of review for the denial of a Rule 60 motion is abuse of discretion.” Dedeaux Util. Co. v. City of Gulfport, 63 So.3d 514, 546 (¶97) (Miss.2011) (citing Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss.2001)). Our review of the trial court’s denial of a Rule 60(b) motion considers whether the judge abused the broad discretion granted by the rule, which provides extraordinary relief “only upon an adequate showing of exceptional circumstances.” Perkins, 787 So.2d at 1261 (¶ 9) (citing King v. King, 556 So.2d 716, 722 (Miss.1990)). “A party is not entitled to relief merely because he is unhappy with the judgment....” Id.
¶ 16. Rule 60(b)(1) provides relief from a final judgment due to “fraud, misrepresentation, or other misconduct of an adverse party.” The relief provided is “extraordinary” and “may be granted only upon an adequate showing of exceptional circumstances.” Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984) (citing Hoffman v. Celebrezze, 405 F.2d 833, *484 835 (8th Cir.1969)). “[A] party making a Rule 60(b)(1) motion must ‘establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case.’ ” Moore v. Jacobs, 752 So.2d 1013, 1018 (¶26) (Miss.1999) (quoting Washington v. Pattis, 916 F.2d 1036, 1039 (5th Cir.1990)). To establish fraud, the movant must show:
(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on it truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
Stringfellow, 451 So.2d at 221 (citing Gardner v. State, 235 Miss. 119, 130, 108 So.2d 592, 594 (1959)).
¶ 17. In its November 2010 order, the trial court found there was nothing to contradict CSXT’s response to Interrogatory 8 except the two affidavits of Bron-dum and McDaniel, which the trial court deemed insufficient to grant the Rule 60 motion. We agree. The interrogatory sought information regarding any complaints and/or notice of similar accidents given to CSXT about the condition of the Jeff Davis crossing. The interrogatory itself is a broadly drafted compound interrogatory, and “condition” is not defined. In answering it, CSXT represented that it had no prior notice of reports of accidents or complaints about this crossing related to its “condition.”
¶ 18. The two affidavits do not clearly show CSXT’s representation was false; the affidavits merely offered vague information that at some time before the accident at issue, the two individuals had seen trucks hung up at the crossing for an unknown reason, and after these incidents, CSXT vehicles were seen at the crossing inspecting and repairing the track. The affidavits do not show there were prior accidents similar to this accident, or reports of complaints about the condition of the crossing to CSXT. Further, any knowledge claimed by Brondum and McDaniel cannot be imputed to CSXT. If there were internal documents of CSXT that revealed CSXT’s knowledge of hang-ups at this crossing, or affidavits of employees of CSXT who, acting in the scope of their employment, knew of such incidents, the results of this case might well be different. Here, Winner and Brakefield merely present two affidavits that contradict CSXT’s representations. There is no “clear and convincing” proof that the affidavits are truthful and that CSXT committed fraud.
¶ 19. Accordingly, we conclude that the trial court did not abuse its discretion in finding CSXT did not commit fraud, misrepresentation, or misconduct in its response to Interrogatory 8. Winner and Brakefield fall well short of providing clear and convincing evidence that CSXT lied, withheld knowledge, or had notice of prior accidents or complaints about the condition of the crossing, which prevented Winner and Brakefield from “fully and fairly” presenting their case.
II. Newly Discovered Evidence under Rule 60(b)(3)
¶ 20. Winner and Brakefield also argue they are entitled to a new trial under Rule 60(b)(3) based on the alleged newly discovered evidence in the two affidavits. A Rule 60(b)(3) motion is also an extraordinary motion, and will be granted when:
(1) the evidence was discovered following the trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; *485 (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that a new trial would probably produce a new result.
Moore, 752 So.2d at 1017 (¶ 18) (quoting Ag Pro, Inc. v. Sakraida, 512 F.2d 141, 143 (5th Cir.1975), rev’d on other grounds, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976)). The party requesting a new trial on the ground of newly discovered evidence must show the trial court that the evidence came to his knowledge since the trial, and there was no lack of diligence to discover it sooner. Sullivan v. Heal, 571 So.2d 278, 281 (Miss.1990).
¶21. Winner and Brakefield do not meet the factors for this test either. The two affidavits are not “new evidence” that was discovered after trial; Brondum and McDaniel reiterate what Winner and Brakefield testified to at trial — that there had been occasions when trucks had become hung up on the crossing. Winner and Brakefield again maintain that the CSXT repair trucks at the crossing show CSXT had “notice” of a dangerous condition at the crossing. As stated in the first issue, we are not persuaded by this argument.
¶ 22. Additionally, Winner and Brake-field failed to exercise due diligence. The movant must provide facts implying reasonable diligence. N.L.R.B. v. Jacob E. Decker & Sons, 569 F.2d 357, 363-64 (5th Cir.1978). As CSXT notes, Brondum had a business next to the crossing and also witnessed the accident at hand. Brondum had lived in the Long Beach area ten years. Likewise, Brakefield had lived in the area sixty-two years. Winner and Brakefield fail to explain why, in the four years leading to trial, they could not have found and interviewed these individuals. As Winner and Brakefield mention, Hurricane Katrina did intervene in 2005, between the time of the accident and trial, but they offer no reason why they did not run an ad for witnesses before rather than after trial.
¶ 23. The affidavit testimony is also impeaching and cumulative in nature. The information in the affidavits contradicts what several witnesses stated at trial— they were not aware of hang-ups at the crossing. These witnesses included Mayor Skellie, Officer McDowell, the Dubuissons, and expert witness Burnham. Additionally, the testimony in the affidavits is cumulative of Winner and Brakefield’s testimony presented at trial about other incidents on the crossing.
¶24. In support of their argument, Winner and Brakefield cite to the wrongful-death case of Goode v. Synergy Corp., 852 So.2d 661 (Miss.Ct.App.2003). After a jury verdict for the defendant gas company, we found testimony of the company’s former employee was newly discovered evidence, and we granted a new trial. Id. at 662 (¶ 1). However, in Goode, there are several distinguishing features from this case. First, the defendant never identified its former employee before trial, so the plaintiffs would have had difficulty even knowing about this person to depose him. Id. at 665 (¶ 13). Second, the record showed that the plaintiffs had no knowledge, prior to the fire that caused the water-heater accident, of a critical fact: that a homemade ventura plate had been made and installed by this employee. Id. at 665-66 (¶ 15). This fact, however, was the basis of the gas company’s defense on what caused the fire. Id. at 664 (¶ 12). Also, the record shows the Goode plaintiffs exercised due diligence in trying to ascertain this information before trial, but could not. Id. at 666 (¶ 17). Finally, the affidavit information in Goode was not cumulative because no testimony of this type was offered to the jury. Id. at 666-67 (¶ 20).
*486 ¶25. Here, a CSXT employee did not provide the affidavits, but two individuals who responded to an ad in the paper soliciting witnesses. The plaintiffs in Goode claimed no knowledge of the “smoking gun” — the homemade water-heater plate— yet here Winner and Brakefield were allegedly aware of prior incidents at the crossing. Additionally, the Goode plaintiffs satisfied the due-diligence requirement, unlike here. The record does not indicate that Winner and Brakefield attempted to interview business owners near the tracks prior to trial or ran an ad similar to the one run after post-trial motions were filed.
f 26. Accordingly, the two affidavits are not newly discovered evidence under Rule 60(b)(3). Therefore, the trial court did not abuse its discretion in denying Winner and Brakefield’s Rule 60 motion.
III. JNOV or New Trial
¶ 27. While Winner and Brakefield do not raise an argument related to the trial court’s denial of their motion for a JNOV or a new trial, we shall briefly discuss it, as they appealed this motion in their notice of appeal.
¶ 28. A motion for a JNOV challenges the legal sufficiency of the evidence. Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 948 (¶ 25) (Miss.2008). The standard of review is de novo. Id. (citing Johnson v. St. Dominics-Jackson Mem’l Hosp., 967 So.2d 20, 22 (¶ 3) (Miss.2007)). The reviewing court will affirm the denial of the motion when substantial evidence supports the verdict. Id. Evidence will be reviewed in the light most favorable to the verdict. Id. at 949 (¶ 25).
¶29. On the other hand, our Court reviews the grant or denial of a motion for a new trial under an abuse-of-discretion standard. White v. Stewman, 932 So.2d 27, 33 (¶ 16) (Miss.2006) (citing White v. Yellow Freight Sys., Inc., 905 So.2d 506, 510 (¶7) (Miss.2004)). In reviewing the trial court’s decision, the reviewing court will consider the credible evidence in the light most favorable to the non-moving party, and all credible evidence supporting the claim will generally be taken as true. White, 905 So.2d at 510-11 (¶ 7) (citing Green v. Grant, 641 So.2d 1203, 1207 (Miss.1994)). The reviewing court will only reverse when allowing the verdict to stand would “work a miscarriage of justice.” Id. at 511 (¶ 7) (citing Green, 641 So.2d at 1207-08).
¶ 30. The trial court denied Winner and Brakefield’s May 20, 2010 motion for a JNOV or, in the alternative, a new trial, finding the jury’s verdict was supported by the weight and sufficiency of the evidence. We agree. Based upon the evidence presented at trial on negligence, and the instructions given to the jury, we cannot find error in the motion’s denial.
¶ 31. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.

. Winner and Brakefield filed separate complaints, which were later consolidated by the trial court.

. Before trial, Precision settled with Winner and Brakefield, and was dismissed from the lawsuit.

. The facts regarding the post-trial investigation were presented in an affidavit by Benjamin Saunders, counsel for Winner, whose affidavit was attached to the Winner and Brakefield's Rule 60 motion for relief of June 18, 2010.

. We note this is a compound interrogatory, but there was no objection to it by CSXT. The record does not reflect that Winner and Brakefield requested production of documents related to the information requested in this interrogatory.

.In appealing a pending motion, Winner and Brakefield preserved their right to appeal it. The comment to Mississippi Rule of Appellate *483 Procedure 4(d) explains that "a notice of appeal filed before the disposition of a specified post-trial motion will become effective upon disposition of the motion.”

. In Brondum’s affidavit, he stated that he has lived in the area for ten years, and that from 2000 until immediately prior to the accident in November 2004,
he personally observed ... trucks that had become stuck on top of the Jefferson Davis crossing ... [t]hat he has seen CSX at the Jeff Davis crossing with trucks bearing its logo, after hang-ups that occurred prior to November 3, 2004, repairing and inspecting damage to its tracks or the roadway on top of the tracks once the vehicles had been removed.
In McDaniel’s affidavit, he stated that he has lived in the area for sixty-two years, and that from 2000 until Hurricane Katrina hit (August 2005),
vehicles ha[d] hung up on this humped crossing as he visualized these hang-ups personally as they involved trucks that could not maneuver across the top of the CSX crossing; ... he ha[d] also read the articles from the Biloxi Sun Herald, describing prior incidents at the CSX crossing. ... [H]e ha[d] seen CSX at this crossing in its trucks, after a hang-up, working on the damages to its tracks or inspecting its trackage after the hung up vehicles were removed.
Also, McDaniel was a Long Beach police officer for approximately seven years, and "worked the scene” whenever a hang-up or accident occurred at this crossing.

. Winner and Brakefield actually supplemented their motion for a JNOV or a new trial, but cited their supplementation as "pursuant to Rule 60.”